McCONNELL v. EMPIRE TIN MINING CO.

(Second Division.  Nome.  July 1, 1916.)

No. 2628.

MINES AND MINERALS &#8674;112(3)—MECHANICS' LIENS.

> The lienor was employed to work on defendant's tin mines. Part of the work performed was at the mill and on the water ditch leading thereto, located about two miles from the mines. The evidence showed that the ditch, the mill and the mines constitute one and the same plant, under the supervision and common ownership of the defendant; that the work done by the lienor was for the purpose of developing and opening up of the mine, and tended to assist in the separation of the commercial product of the mine from the gravels.  The lien claim was laid on the two mining claims, and did not contain any separate statement showing how much time was charged for which was employed on the mill or ditch.  On objection to the proofs and lien claim, *held*, under the statute of Alaska, the lien may attach for labor "on, in or about" such mine or mines, and the mill and ditch being so a part of the mining plant, the work done was "on, in or about" the mine, and the lien was sustained, and judgment for lienor.

This is an action for the foreclosure of a miner's lien asserted by the plaintiff against those certain lode claims of the defendant company, lying contiguous one with the other, and known and described as the North Star and Lucky Queen lode claims, being worked as one mine and known as the "Bartell's Tin Mine," and more fully described in the complaint herein.

Plaintiff claims that on the 17th day of January, 1915, said Empire Tin Mining Company, by and through one Geo. Blevin, then acting as agent and general manager of said Empire Tin Mining Company, employed plaintiff as a miner to assist in the opening up, developing, and mining of said mine and mining claims; that thereupon, upon said date, plaintiff entered into the employ of said defendant, and thereafter continuously performed work and labor on said mine and mining claims, in opening up and developing the same, until the 18th day of August, 1915, at the agreed rate of wages set forth in the complaint; that no part of said wages has been paid, and that on the 31st day of August, within 30 days from plaintiff's cessation of labor upon said mine, and because of said

nonpayment of wages, he took the measures prescribed by statute to file and claim a lien on said mine and mining claims.

The defendant denies that it employed the plaintiff as alleged in the complaint, or that the plaintiff entered into the employment of said defendant, or that the defendant agreed to pay the plaintiff any rate of wages whatever for work on said premises; alleges that if the plaintiff was employed by Geo. Blevin, or at all upon the mining claims referred to, such employment was without the knowledge or consent of the defendant, and that said Blevin had no authority whatever to employ said plaintiff, or to incur indebtedness of any kind or character against the plaintiff, or against any of its property; denies that there is anything due the plaintiff from the defendant; and denies that the plaintiff is entitled to any lien upon its said mine and mining claims.

T. M. Reed, of Nome, for plaintiff.

Ira D. Orton, of Seattle, Wash., and O. D. Cochran, of Nome, for defendant.

TUCKER, District Judge. I am of opinion, from the contract of employment of said Geo. Blevin by the defendant and the evidence in the case, that said Blevin was acting as the agent and general manager of the defendant company at the time that he employed the plaintiff, and that any secret limitation upon his apparent authority as such agent, not known to the plaintiff, would not be binding upon the plaintiff. It also appears, from the telegrams passing between the president of the company and said Blevin, that said Blevin was in fact authorized to make such employment and that the company had notice thereof. I am therefore satisfied from the evidence that the plaintiff has established the allegations of his complaint with regard to his employment by the defendant company.

Plaintiff seeks to establish and enforce his lien under the territorial statutes of Alaska (Session Laws 1915, c. 13, p. 29). Section 1 of that act reads:

"Every person who at the instance of the owner performs work or labor in, on or about a mine or mining claim in opening up, developing, sinking, drifting, stoping, mucking, shoveling, mining, hoisting or performs any other class or kind of work on, in or about a mine or mining claim necessary or convenient to the development, operation, working or mining thereof, or the extraction of the earth,

rock, quartz, ore, minerals, or mineral bearing sands or gravels therefrom, or performs any work or labor in or about such mine or mining claim tending to or assisting in the separation or reduction to a commercial value of the minerals contained therein, or thereon or extracted therefrom, shall have a lien on such mine or mining claim to secure the payment of the amount due for such work or labor," etc.

Counsel for defendant argue that, because it appears in evidence that plaintiff did not actually work on the two mining claims for the whole period of his employment, but worked for a part of that time only in a mill or on a ditch connected therewith, some two miles distant from the claims, therefore plaintiff is in any event only entitled to his lien for the work actually done on the claims, and that, inasmuch as the plaintiff fails to show at what exact time he ceased to work on the claims and went to work on the mill and ditch, plaintiff is excluded from his lien entirely, and in support of their very plausible argument counsel for defendant cite a decision in a Nevada case reported in Salt Lake Hardware Co. v. Chainman Mining & Elect. Co. (C. C.) 137 Fed. 632; but that case differs from the case here in these two essential respects: (1) The mechanic's lien law in the Nevada case has for its purpose the giving of a lien upon certain property to those persons who perform labor or furnish material for the construction of buildings to be used in and about a mine, but in the case at bar the purpose of the Alaska statute is to provide a lien upon mines and mining property for laborers and miners doing work in, on, and about such property; and (2) in the Nevada case the contention of the plaintiff was that he was entitled to a lien on the "Chainman mill site," which the court said "was not upon any part of the Chainman mine, and has no connection whatever with the mill upon which the lien is claimed."

The difference between the Nevada case and the case here is very plain to the court, both with regard to the respective statutes and the facts. The evidence in the case at bar shows that the plaintiff was employed by the defendant from January 17, to August 18, 1915, as a miner to assist in the opening up, developing, and mining of certain mining property named in the complaint. Much stress is put on the terms "in, on or about," used in the Alaska statute, and the court is asked to so construe it as to restrict the operation of the lien to work done by the plaintiff within the boundaries of the two claims against

which the lien is asserted, thereby denying the plaintiff's lien for the value of his work done at the mill and on the ditch about two miles distant; but the evidence shows that the ditch, the mill, and the mining claims constitute one and the same plant, under the supervision and common ownership of the defendant corporation, and that the work done by the plaintiff was for the purpose of developing and opening up of the mine or mining claims, and tended to and assisted in the separation or reduction to a commercial value or product of the minerals contained therein or extracted therefrom. Looking to the protection of the miner and the securing to him of his lien for wages, and the payment thereof, for work performed in the development of mines or mining claims and the reduction of the minerals taken therefrom to a commercial value, the Alaska statute is broad and comprehensive in its scope. It was evidently drafted by a good lawyer with care and intelligence, both with regard for the law and the mining conditions. It provides in plain terms that the miner shall have the benefit of the lien when he "performs any work or labor in or about such mine or mining claim tending to or assisting in the separation or reduction to a commercial value of the minerals contained therein, or thereon or extracted therefrom."

Now the evidence shows that the plaintiff, when not engaged immediately upon the mining claims was engaged in work on the ditch or in the mill, and that the mill was a reduction plant accessory to the mine or claims, and that the plaintiff actually reduced approximately 40 tons of ore to commercial product or value. In view of this evidence, it would be clearly unreasonable and contrary to the simplest principles of justice to deny the plaintiff the benefit of his lien, because he did not perform the work of reducing the minerals extracted from the mines within or on the claims above named. The mill was only two miles distant from the mines, and was owned by the defendant company, and it is apparent from the evidence that its location was determined by the availability of water in quantities necessary for the reduction of the ore to commercial product, and was probably the closest suitable site for such mill.

In the Nevada case cited by the defendant it is reiterated, as has been held by nearly all courts, that the lien laws should be construed liberally with a view to effect their object and promote justice. The construction sought to be put on this stat-

ute by defendant's counsel is restrictive in the highest sense, and ignores the obvious meaning and language of the Legislature, and cannot prevail.

It has also been contended by the defendants that, as the act of 1915 was not in effect at the commencement of the work by the plaintiff, but only went into effect upon April 21, 1915, he cannot claim a lien thereunder for work done prior to that date. However, this act supersedes and is in lieu of the act of 1913 (Session Laws 1913, p. 308), which former act in terms provides that:

"Every person who shall perform labor upon * * * any * * * mine, lode, mining claim or deposit * * * shall have a lien upon such mine, lode, mining claim, [or] deposit," etc.

Under said act of 1913 plaintiff is entitled to a lien upon the mine or mining claim for work actually performed thereon prior to April 21, 1915, and the evidence shows that the work performed by the plaintiff prior to May, when he started to work upon the ditch, was upon the mining claims in question. Moreover, the act of 1915 expressly saves liens claimed under the act of 1913. When plaintiff started to work upon the ditch upon May 4, 1915, as testified to by him, the act of 1915 had gone into effect, and he is entitled to claim a lien thereunder as heretofore held.

It is also worthy of note that, while the act of 1913 only confers a lien upon a mine for work actually performed thereon, the act of 1915 is much broader in its terms. The defendant also disputes the amount of attorney fees asked by plaintiff, viz., $300, as excessive; but the court is of opinion that under the circumstances the same is a reasonable allowance. Findings of fact and conclusions of law and a decree may be entered in accordance with this opinion.